JON M. SANDS
Federal Public Defender
District of Arizona
850 West Adams, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2700

ANA LAURA BOTELLO
State Bar No. 030528
Asst. Federal Public Defender
ana_botello@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-22-168-PHX-DJH |
|---|---|
| Plaintiff, | **SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE** |
| vs. | |
| James Arthur Mostowski, | |
| Defendant | **Defendant Not In Custody** |

Defendant, James Arthur Mostowski, through undersigned counsel, hereby submits the following Sentencing Memorandum and Motion for Downward Departure and/or Variance in support of a sentence of 18 months' of probation.

Respectfully submitted:  December 12, 2022.

JON M. SANDS
Federal Public Defender


*s/Ana Laura Botello*
ANA LAURA BOTELLO
Asst. Federal Public Defender

## SENTENCING MEMORANDUM

Defendant, James Arthur Mostowski, hereafter "Mr. Mostowski," is a 76-year old disabled Vietnam War Veteran who received, *inter alia*, the United States' Navy's National Defense Service Medal, and Mentoring Unit Commendation award. Mr. Mostowski is currently awaiting surgery to replace his pacemaker (implanted in 2012), and suffers from diabetes, chronic obstructive pulmonary disease (COPD) (which requires he use an oxygen tank), arthritis, and has also been diagnosed as having Post Traumatic Stress Disorder related to his service in the Vietnam War. Mr. Mostowski is currently prescribed at least 17 medications. He is before the Court on his first felony offense for the offense of Making a Materially False Statement in Connection with the Acquisition of a Firearm. To wit, Mr. Mostowski retired to Mexico where he has been living for decades, a local "friended" the septuagenarian in attempts to get Mr. Mostowski to purchase a firearm for him.

### A. Factual and Procedural History

Mr. Mostowski was born and raised in California where he lived until his family moved to Mesa, Arizona when he was 16 years old. Mr. Mostowski lived in California for some years after his military service, and then returned to Arizona where he lived for over 40 years. As his retirement approached, Mr. Mostowski's friends invited him to visit a small fishing village on the coast of Mexico where he could buy a home and retire. Mr. Mostowski often traveled between Arizona and Mexico until he decided to live in Mexico full time (in 2011) as the cost of living was cheaper and he was only living off of his social security income. Mr. Mostowski has two daughters, Jamie and Theresa, who live in Arizona, and three step-children who live in California and Mexico. He also has a longtime girlfriend, Lucinda, who lives in Arizona and cannot visit Mexico with him as she cares for her ailing parents and a disabled brother. Because of his familial ties to Arizona, and because the Veteran's Affairs covers his medical costs, Mr. Mostowski often traveled from his

2

home in Mexico to the Phoenix area to visit his girlfriend and his daughters. In Mexico, he lived alone although he was very close to his stepdaughter who cooked for him and cleaned his home. Despite living for Mexico for decades, Mr. Mostowski learned little Spanish. Nevertheless, he liked attending social gatherings with the locals in his town. One of these locals, a friend of his stepdaughter, would sometimes visit him and bring him fish and shrimp. As he could not speak Spanish and the local could not speak English, they would use a translation app to communicate. For years, this local visited Mr. Mostowski and brought him fish and shrimp and hung out with him from time to time. Mr. Mostowski did not think anything of it, until this man, under the guise of friendship, asked Mr. Mostowski to purchase firearms for him.

Initially, Mr. Mostowski refused as he knew it was illegal to export firearms from the United States to Mexico. The "friend," however, persisted over various visits, and told Mr. Mostowski that he need not bring the firearms to Mexico, but only purchase them for him and that someone else would deliver the firearms to him. Further, he lured Mr. Mostowski with the promise of money. Money that this individual knew Mr. Mostowski badly needed. Forever trying to make all of his children and grandchildren happy, Mr. Mostowski had gotten himself into debt in the sum of over $30,000 over the years. He made minimum payments to his credit cards with his social security income of $682 per month, but the amounts owed never went down. Mr. Mostowski was too ashamed to tell his children and grandchildren that he could not afford to buy them Christmas gifts, birthday gifts, etc. and that he had gotten himself in debt trying to keep up with gifts over the years. For a long time, Mr. Mostowski believed that there was no way that he could live in Arizona. Not off the $682 he was receiving from social security alone. When offered $3,000 per firearm, or $6,000 total, he agreed to purchase the firearms so long as someone else delivered them. All along, Mr. Mostowski thought his "friend" needed the firearms for protection and not for illicit purposes.

On February 9, 2022, Mr. Mostowski ordered the firearms online from a firearms dealer in Alabama while using a computer in Mexico. On February 18, 2022, Mr. Mostowski arrived at C2 Tactical (a federally licensed firearms dealer in Phoenix, Arizona) to pick up two rifles he had ordered online. Unbeknownst to Mr. Mostowski, his order for two rifles had been flagged by the Alcohol, Tobacco and Firearms (ATF) Bureau as suspicious. ATF used the time between his order and the scheduled delivery through a different arms dealer in Arizona to investigate this suspicious purchase. Working with C2 Tactical in Phoenix, agents arranged for Mr. Mostwoski to pick up the firearms on February 18, 2022 with agents present.

Indeed, Mr. Mostwoski provided an address in Overgaard, Arizona that was on his driver's license, but where he had not lived for years. Furthermore, he initially checked that the firearm was not for him, but later changed his answer to say the firearm was for him when the firearms store employee informed him they could not sell him the firearm if it was not for him. Two store employees assisted Mr. Mostowski, who could not carry the firearms himself, into the back of his vehicle. Thereafter, ATF agents initiated a traffic stop and arrested Mr. Mostowski. Later, Mr. Mostowski admitted he had made material misrepresentations on the firearms form as to his address and that he was not the actual purchaser of the firearms.

Mr. Mostowski has been on pretrial release since February 25, 2022 (for nearly ten months) and has complied with all of his terms of pretrial release. Mr. Mostowski had a particularly difficult time with the condition that he not be allowed outside of Arizona to retrieve additional clothing from his home in Mexico or to take care of things there. However, once he failed to deliver the firearms, he began receiving threats from his "friend" that Mr. Mostowski needed to return the money or his family would be hurt. Mr. Mostwoski never knew he was dealing with the "Mexican mafia" or "drug lords" (despite using this language in his presentence report interview) before these threats began. He only realized after the failed

transaction that this man was not his "friend" as he had pretended to be, but likely had connections with criminals.

On March 15, 2022, a three count indictment was filed against him. On September 19, 2022, Mr. Mostwoski pled guilty to Count 3 of the Indictment. In the time that he was released on pretrial services in Arizona and not allowed to visit Mexico, Mr. Mostowski began living with his girlfriend in Arizona. Again, he struggled to make ends meet earning only $682 monthly from his social security income. It was then that he learned that he was entitled to a military pension for his time in the Navy during the Vietnam War. In fact, Mr. Mostowski had been entitled to a pension for years and received a significant amount of backpay from which he was able to pay off most of his debts. During his time on pretrial, Mr. Mostowski also realized that he should not be living in Mexico alone as his health was deteriorating and he needed to be closer to his daughters. Accordingly, he recently purchased a home in the Phoenix metro area with a VA loan, and also had to purchase a new vehicle to get around in Arizona. While he has gotten in some debt to furnish his home and make the bathroom suitable for his medical needs, he is now able to live in Arizona with his military pension benefit and his social security income. Mr. Mostowski feels remorseful for his role in the offense, and realizes he was fooled and endangered by someone he thought a friend.

**B. Motion for Downward Departure and/or Variance**

In the fiscal year 2021, only 428 (less than 1% of 57,249) of all federal offenders were aged 70 or older.[1] More than 42% of all offenders aged 70 or older received "alternative sentences or fines" in lieu of incarceration. *Id.* at 5. The Sentencing Commission specifically directs this Court to consider whether a defendant's age (§5H1.1), mental and emotional conditions (§5H1.3), physical

---

[1] United States Sentencing Commission July 2022 Report "Older Offenders in the Federal System" page 3, Figure 2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Older-Offenders.pdf. Last accessed 12/11/2022.

condition (§5H1.4), criminal history (§5H1.8), military service (§5H1.11), circumstances not adequately taken into consideration (§5K2.2) and aberrant behavior (§5K2.20) as grounds to grant a downward departure. Mr. Mostowski hereby submits that this Court must grant him a downward departure and/or variance under 18 U.S.C. § 3553(a) for all of the aforementioned reasons.

Mr. Mostowski is 76 years-old and has no prior felony offenses (see departures for age (§5H1.1), criminal history (§5H1.8), and aberrant behavior (§5K2.20)). He served in the United States Navy during the Vietnam War and suffers Post-Traumatic Stress Disorder due to his service (see departures for mental and emotional conditions (§5H1.3) and military service (§5H1.11)). It is well-known that veterans of the Vietnam War suffered horrific stressors from their service. Part of the reason Mr. Mostowski chose to retire in a small fishing village was so that he could be away from loud noises and overcrowded situations—similar to those that he would experience in a prison. He has been seeing a psychologist to address recurring nightmares from his time in Vietnam and also takes medication to alleviate his mental and emotional health. A prison setting would not be conducive to improving this Veteran's mental or physical health conditions.

Furthermore, Mr. Mostowski is also taking at least 17 medications in total such that this court should consider a departure based on his physical condition pursuant to §5H1.4. Of particular importance here, Mr. Mostowski is not only waiting for surgery to replace a dated pacemaker, but also suffers from COPD which affects his lungs and requires that he use an oxygen tank. As of this writing, much of the world is seeing a resurgence of Covid-19 cases, despite vaccination status of much of the world. Per the Centers for Disease Control,[2] there have been 1,547,178 total deaths involving Covid-19, pneumonia, and influenza in the United States as

---

[2] Weekly Updates by Select Demographic and Geographic Characteristics, Provisional Death Counts for Coronavirus Disease 2019 (Covid-19), Table on Sex and Age available at https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#SexAndAge last accessed 12/11/2022.

of December 7, 2022. Of these, 829,253 or about 54% have been for individuals over the age of 75 years of age. Furthermore, individuals with comorbidity (more than one condition) such as diabetes and respiratory ailments (both of which Mr. Mostowski has) have fared worse off than other individuals. This makes it incredibly risky to place Mr. Mostowski in a prison setting with many other individuals coming and going from the prison, especially as most prisons have relaxed their Covid-19 protocols due to mass vaccination. The fact that the risk to others who are younger and healthier has decreased, maximizes the risk that Mr. Mostwoski could die in a prison setting from Covid-19. For all of these reasons, the Court must also fashion a downward departure pursuant to §5K2.2 for circumstances not adequately taken into consideration. Finally, the Court may also grant a downward departure for all of these and other reasons pursuant to 18 U.S.C. § 3553(a).

**C. Conclusion**

A prison sentence for Mr. Mostowski runs the high risk of being a life sentence due to Mr. Mostowski's age and health, but also for the presence of so many mitigating factors outlined by the commission that the Presentence Report irresponsibly fails to address in full. Mr. Mostowski is a decorated veteran who served his country in one of the most difficult wars our nation has ever faced. Despite great trauma experienced during his service, Mr. Mostowski lived a mostly crime free life without any felony offenses. Mr. Mostowski committed the instant offense because at the time, he was experiencing great financial trouble, but also because he was bamboozled by someone he thought was his friend. This person preyed on Mr. Mostowski as a lonely retiree in his late 70s to use him for illicit purposes. Mr. Mostowski feels remorseful for what occurred, and does not need a prison sentence to teach him that he cannot disobey the law. He has performed well while on pretrial release these past ten months. For all of these reasons, the Court should sentence him to no more than 18 months of probation.